GEORGE N. STEVENS *v.* HARVEY TALCOTT.

CHITTENDEN,
January,
1839.

*If a contract contain nothing special, except as to the time and mode of payment, and that time has expired, there is no necessity of declaring specially, for a recovery may as well be had under the general counts.*

*It is not error for the judge to express his opinion to the jury upon the weight of evidence.*

ASSUMPSIT. The plaintiff declared, " in a plea of the case, " for that whereas, heretofore, to wit, on the 25th day of " February, 1833, certain articles of personal property, to " wit, one horse, one sleigh and one double harness, be- " longing to one Anson Downer, had been taken on execu- " tion against said Downer, and were then about to be sold " on said execution, at vendue, and the defendant being plain- " tiff in one of the said executions, and there having been " theretofore had between the plaintiff and said Downer, cer- " tain conversations, respecting the said Downer's selling to " the plaintiff his farm in said Huntington (to wit; lot No. " 157,) the defendant, in consideration that the plaintiff would, " at his the said defendant's special instance and request, bid " off the said property at the said vendue, undertook and " faithfully promised the plaintiff to procure the said " Downer's deed to him the plaintiff of his the said Dow- " ner's farm, the day but one from the said 25th day of Feb- " ruary 1833, to wit, the 27th day of February 1833, and " have the said Downer take back the said property, and the " amount, so bid by the plaintiff for the same, deducted from " the consideraiton of said farm, or if the said plaintiff did " not procure said Downer to deed, that he the said defend- " ant would take the property and pay the amount of the bids " the plaintiff should make for said property. And the plain- " tiff avers, that relying on the promise and undertaking of " the defendant, so made as aforesaid, he, the plaintiff, did " afterwards, to wit, on the same 25th day of Feb. 1833, bid " off said property under the direction and at the request of " the plaintiff, at a large sum of money, to wit, the sum of " thirty-one dollars. And the plaintiff further avers, that the " said defendant wholly neglected and refused to procure the " said Downer's deed to him, the plaintiff, of his said farm " at Huntington, though the plaintiff was ready and willing " to receive said deed, and that the said Downer wholly re- " fused to deed said farm to plaintiff; and the plaintiff further

CHITTENDEN.
January,
1839.

Stevens
vs.
Talcott.

"avers, that the defendant wholly refused to receive said property, and pay the amount of said bids, though the plaintiff afterwards, to wit, on the 28th day of February 1833, at Huntington aforesaid, tendered said property to him the defendant. And the plaintiff further avers, that afterwards, to wit, on the 19th day of June 1833, the said bids remaining unpaid, Rolla Gleason, the officer who sold said property, recovered a judgment against him, the said plaintiff, on said bids, for $33,77, damages and costs, and that after the commencement of said suit and before the trial thereof, to wit, on the 14th day of June 1833, he gave notice to said defendant of the commencement of the suit, yet the defendant wholly refused to settle the same. By reason of which, the plaintiff hath had said Gleason's judgment against him to pay, and was put to great difficulty, trouble, expense, and sacrifice of property, in raising money to pay the same, to wit, ten dollars; all of which the defendant refuses to pay, though often thereto requested."

There was a second special count substantially like the first, together with the common counts in indebitatus assumpsit.

Plea, general issue.

This case was tried by a jury in the county court, and came to this court upon the following bill of exceptions:

"On the trial of this case, it was agreed that sundry executions against one Downer (one of which was in favor of the defendant) were in the hands of Gleason, the deputy sheriff, upon which he had seized and posted certain property of Downer's, to wit, a horse, harness, &c.

"The plaintiff then introduced Roswell Stevens as a witness, who swore that on the day of sale, the defendant came to the plaintiff's house, and inquired of him (the plaintiff) if he was going to let Downer have some money, to which the plaintiff replied that he would, if he, Downer, would secure what he then owed him.

"That afterwards, while at the place of sale, the defendant called on witness to hear the contract which was made, which he stated to be, that plaintiff was to bid off the property and advance the money to pay the executions, and that Downer was to come the next day or the day after, and give to the plaintiff a deed of certain land as security. "The plaintiff stated that he would not take Downer's re-

" sponsibility, and the defendant said that he would be re-
" sponsible, and if Downer did not come and give the deed,
" he, the defendant, would take the property and pay the
" plaintiff his money. That the property was bid off by the
" plaintiff, (and it appeared he had paid the amount to the
" sheriff,) and that the property was taken by the defendant,
" and left by him with the witness for safe keeping. That
" Downer afterwards refused to give the deed.

" That about a week afterwards, Talcott came to the plain-
" tiff's house, and asked the plaintiff if he would then take
" the deed, if he, Talcott, would get Downer there, to which
" plaintiff replied ' yes.' But Talcott did not get Downer
" there nor get the deed.

" He further testified, that three or four weeks afterwards
" the plaintiff took a mortgage of the same land from Dow-
" ner to secure the debt which he previously owed the plain-
" tiff, and that on that occasion there was talk about the "Tal-
" cott debt," and Downer said he should not take the proper-
" ty back—that Talcott must take it. But if plaintiff would
" advance him $12,00 he would secure the debt which he
" previously owed. That witness asked Downer if he was
" going to secure the Talcott debt, and the witness said  ' no.'

" The plaintiff then introduced Mr. Marshall, who testified
" that the week after the sale of the property, the defendant
" came to the store of A. Ferguson, where the sale &c. took
" place, and inquired if Downer had given the deed, &c.—
" that he, the defendant, went to see the plaintiff, and said
" on his return, that the plaintiff was willing to receive the
" deed then,if Downer would give it. That defendant procured
" witness to go for Downer and get him  to come and execute
" the deed; that witness went and talked with Downer, who
" refused to go, and said that Talcott had used him like a ras-
" cal before, and now he, Downer, had 'got the grapples on
" him ;' that he had bid off the property and might keep it, &c.
" Witness returned and told Talcott what Downer said, and
" Talcott said he had got to take the property and pay more
" than it was worth. That Talcott then took the horse, which
" had been bid off, and took it away with him.

" Alexander Ferguson confirmed the testimony of Mar-
" shall in all its particulars, except that he was not present at
" the conversation between that witness and Downer.

" B. Kenyon also testified, that in March after the sale, de-
" fendant told him that Downer would not do as he agreed,
" and that he, Talcott, had got the property on hand and
" wished to sell it to the witness—and that Talcott requested
" the witness to bring the property from R. Stevens' to his
" place.

" The defendant introduced Downer, who testified that a
" few days after the sale, he went to see the plaintiff, and that
" plaintiff said in reference to this transaction, that the time
" for giving the deed had run out, and that witness could do
" as he pleased about giving it ; that the witness was wil-
" ling to give the deed until the plaintiff said that.

" Several witnesses were sworn as to the general character
" in point of truth, of both R. Stevens and Downer, and the
" witness, who was present at a former trial of this case, swore
" that Downer did not swear on that trial that plaintiff dissua-
" ded him from giving the security.

" Upon this evidence, the court charged the jury, that, if
" they found the contract proved as contended for, and that
" it had not been performed, they would find for the plaintiff,
" for the amount paid by him to the officer, unless they found
" that it was the fault of the plaintiff that it was not performed ;
" that if the plaintiff had refused to receive the security, or if
" he had prevented Downer from giving it by dissuasion, when
" he otherwise would have given it, he could not recover.

" But that if they found the time for giving the deed to be
" limited by the contract, and to have expired before the dec-
" laration testified to by Downer, such declaration would
" not defeat the plaintiff's right of recovery.

" The jury, after being out some time, returned, not a-
" greed. Whereupon, the court remarked to them further,
" that they saw no difficulty in the case. That a contract of
" some kind, like that set up, was proved beyond question, and
" it was not pretended that it was fulfilled, and that, in the
" opinion of the court, the testimony of Downer fell altogeth-
" er short of sustaining a defence.

" Whereupon, the jury found for the plaintiff.

" To all which the defendant excepted."

*W. P. Briggs* for defendant.

*Maeck & Smalley* for plaintiff.

The opinion of the court was delivered by

REDFIELD J.—The court have not been able to perceive how the question of variance, attempted to be raised, becomes important under the state of the pleadings presented. The court, indeed, expressed an opinion to the jury, that some such kind of contract, as that set up, was proved beyond question. This alone might lead the jury to infer that there was no necessity that the plaintiff should prove the *same* contract declared upon, which most undeniably would be necessary under the special counts alone.

But it is to be observed, that this portion of the charge, taken in connection with the other matter submitted by the judge, would by no means justify the conclusion, that the plaintiff could recover short of proving the identical contract declared upon. And had such been the language of the charge, it would be no ground of reversing the judgment.— The declaration contained the common money counts; and the special count, as well as the proof, only tended to show that the plaintiff had advanced his money at the defendant's request and for his benefit, upon a promise of being reimbursed in a particular manner at a day certain. That time having expired, it became on the part of the plaintiff a mere right to recover the money, and there was no necessity of declaring specially.

The other portions of the charge, as originally given, do not seem to be objectionable. After the jury returned into court not agreed, the court did express to them a distinct opinion that the plaintiff was entitled to recover. But the court did not express this as matter of law. If such had been the charge, it would have been erroneous; but the court merely gave to the jury their opinion upon the evidence, and returned them to a further consideration of the case. Whether the court express an opinion to the jury upon the weight of evidence, is always a matter of discretion, and seems to be governed, almost altogether, by practice. In many of the American states it is the constant practice for the judge to express such opinion, in the first instance, before the jury retire. Such practice, it is evident, must tend very much to bias the determination of the jury, and has not usually obtained in this state, at least, in the state courts.

But that provision in our statute, by which courts are authorized to return the jury to a second and third consideration of

CHITTENDEN,
January,
1839.

Stevens
v.
Talcott.

the case, when the court "judge that the jury have mistaken the law, or the *evidence* material in the issue, or have not paid proper attention thereto," seems to presuppose that the court may, in such cases, express to the jury their opinion upon the evidence.   It is true that the jury may adhere to their first opinion, and, when they do, the verdict must be received, and the court are prohibited by statute from granting a new trial on the ground of any difference of opinion as to matter of fact, between the court and jury.

If the jury are made aware of their right and duty to pass upon the evidence, upon their own responsibility, we do not consider it sufficient ground for reversing the judgment, on writ of error or exceptions, that the judge expressed his opinion upon the weight of evidence, either before the jury retired or after they returned into the court, "*not agreed.*"   The latter case would seem more to justify such a course than the former.   In many cases it might be the duty of the judge so to do, and we ought, perhaps, to presume such was the fact in the present case.

Judgment affirmed,