## LAWRENCE RUSSELL *v.* URIAL D. FILLMORE.

Neither a mortgage nor pledge of, nor a lien upon, personal property can be available against subsequent attachments, without a change of possession.

An interest created by a pledge of personal property may be assigned.

TROVER for part of a mow of wheat. Plea, not guilty, and trial by jury.

On the trial in the county court it appeared that, on the 7th of January, 1841, the defendant took the wheat in question, as an officer, by virtue of a legal process against one Darius Heflon,—that said wheat was grown by said Heflon upon the farm of one Cynthia Russell, under a contract between them, that Heflon should carry on said farm for one year from the spring of 1840, and have half the crops raised thereon,—that Heflon lived in one house on said farm and the said Cynthia in another,—that, previous to the 22d of August, 1840, the plaintiff became bail, on an appeal for said Heflon, in consequence of which he became fixed with a liability for about $30, which he subsequently paid,—that

the said Cynthia came into an engagement to indemnify the plaintiff on account of said liability,—that, in consideration thereof, Heflon, on the said 22d of August, executed a writing to said Cynthia, therein declaring that he turned out and delivered to her the half of the crops then growing on said farm, belonging to him, to be taken and kept by her as security against said liability to the plaintiff—reserving to himself a right to thresh out four bushels of said grain for his own use,—and that said wheat was by the said Heflon harvested and put into the barn of the said Cynthia.

It also appeared that, soon after receiving said writing from Heflon, the said Cynthia intermarried with one Daniel Herrick, who, thereafter, lived with her on said farm;—that difficulties arising between Herrick and wife, and Heflon, upon mutual claims connected with the occupancy and carrying on of said farm, by Heflon, the matters were submitted to arbitrators, who awarded the payment of a certain sum to Heflon and that he should be allowed to remain in the house occupied by him upon the farm, until April, 1841, and have his firewood,—and that he did so remain; but whether he did any thing further in pursuance of said contract relative to carrying on the farm did not appear.

It further appeared that, on the 14th of December, 1840, Herrick executed a writing to the plaintiff, whereby, in consideration that the plaintiff discharged the indemnity so given him by said Cynthia, he, Herrick, assigned to the plaintiff all his right to said crops in virtue of said writing executed to the said Cynthia by Heflon—of which assignment it did not appear that Heflon had any notice.

It further appeared that the defendant sold said wheat upon execution, after advertising the same but thirteen days.

The defendant thereupon requested the court to charge the jury that the turning out and delivery, as security, by Heflon to Cynthia Russell did not authorize her to assign her interest in the property to any other person, and, consequently, the assignment by Herrick to the plaintiff was void, and conveyed to the plaintiff no interest in the wheat, and therefore he could not sustain the suit. But the court charged the jury that the assignment from Herrick to the plaintiff did convey an interest to him, so that he could sustain the action.

The defendant also requested the court to charge the jury that if they believed the facts above stated, the defendant was entitled to recover on the ground that the turning out of the wheat from Heflon was fraudulent in law, as against creditors, as there had been no change of possession. But the court declined so to charge the jury.

The defendant further requested the court to charge the jury that, as Heflon still owned an undivided share of the wheat, to wit, four bushels, the officer had a right to take the whole into his possession ; and that the plaintiff could not, therefore, recover in this action.   But the court refused so to charge, but instructed the jury to deduct the four bushels which Heflon had the right to thresh for his own use.

The jury returned a verdict for the plaintiff, and the defendant excepted.

*N. L. Whittemore, Paddock* and *Peake,* for defendant.

The bill of sale from Heflon to Cynthia Russell was not assignable, without the consent of Heflon.   It was not a security for a debt, and Herrick's assignment could not create any interest in the plaintiff, or any other person, until Herrick had been damnified.   This had not happened at the time of the assignment, nor at the commencement of this suit.   2 Kent, 641–2; 4 Kent, 138.   The property was pledged, and possession was essential to the lien.   2 Kent, 637.

The plaintiff cannot object to the defect in the notice given by the officer on the sale of the property, as no person but the party to the execution could take advantage of this irregularity.   *Barnes v. Barnes,* 6 Vt. R. 394.

Heflon sowed, and raised the grain on shares, and harvested it, put it into the barn of which he had a lease, and consequently the exclusive possession ; nor does it appear that any other person ever had the possession of the property.   While it was thus situated it was attached by the creditor of Heflon.

Neither the plaintiff nor Herrick, nor any other person for them, had taken possession of the wheat. It remained where it had been, after it was harvested.   Under these circumstances the sale was fraudulent, and the property was liable

to be attached by Heflon's creditors. *Beattee* v. *Robin*, 2 Vt. R. 181; *Weeks* v. *Wead*, 2 Aik. R. 64. Where personal property is mortgaged, the possession must accompany and follow the sale or it will be void against creditors.

The arbitration cannot affect Heflon's possession, as that subject was not submitted to the arbitrators. If they had decided that he should give up the possession, he would not have been bound to obey, because that question was not submitted to them. Nor does it appear that he surrendered the possession, but he remained on the farm as usual.

*L. E. Pelton* and *S. S. Brown*, for plaintiff.

The defendant has raised three questions in this case.

I. That the transfer of the property in question from Herrick to the plaintiff did not convey such a title to the plaintiff as would enable him to maintain this action.

The interest might be transferred, subject to the rights of Heflon. *Allen* v. *Edgerton*, 3 Vt. R. 442; 2 Kent's Com. 579, and cases there cited ; Montague on Lien, 24.

Had the property been pledged for money, and the money not paid at the time specified, Herrick could have sold the property, Montague on Lien, 242. This pledge stands on a similar footing. If Herrick had paid the money, he could have sold the property and indemnified himself out of the sales. He could, therefore, transfer his lien in discharge of his liability.

Though the property was turned out to Cynthia Russell, who was back bail, yet the plaintiff had an equitable lien upon it, and had she been insolvent the court of chancery would have enforced that lien and ordered an assignment of the property to the plaintiff. Herrick could well do what the court of equity would order done.

II. The defendant contends that the transfer was a fraud in law against creditors, as there was no change of possession.

The contract to carry on the farm upon shares, gave Heflon no right to the possession of the buildings ; and his right to the barn would only be implied from the necessity of using it to secure the crops. Suppose he had sold his share of the crops, and the purchaser had taken them away as fast as they were cut, and he had put only Cynthia Russell's

part into the barn, could Heflon, in that case, be said to be in possession of the barn ? Heflon conveyed his share of the crops to C. Russell, and when in the barn, the whole belonged to her, and she must be taken to be in possession. It does not appear from the case that Heflon owned any thing, either in, or about, the barn, or had any right there, except a right to thresh out four bushels of wheat ; and this could not give him possession of the barn.

The agreement to carry on the farm on shares, made between the said Cynthia and Heflon, was terminated by the arbitration, which was before the attachment ; and if Heflon ever had any possession, it had been ended by the arbitration, and Herrick was in possession of the property before it was attached by the officer.

In order to take advantage of a fraud in, law, the officer must show his proceedings to have been legal ; and this the defendant has not done, as he advertised the property only thirteen days.

III. The defendant contends that Heflon owned an undivided share of the wheat, and that the officer had a right to take the whole into his possession. The right that Heflon reserved to himself to thresh out four bushels of wheat did not make him and Cynthia Russell tenants in common. He turned out the whole, and his reservation did not vest any thing in him, unless he chose to exercise the right of threshing out the four bushels. If he did not, Cynthia Russell could hold the whole, and the creditors could not take it without paying off her lien, and then they could take the whole. If the officer took only the interest of Heflon, he took merely the right to thresh out four bushels of the wheat. The officer proceeded to sell the whole, and this made him a trespasser, even though Heflon might have been a tenant in common, and the officer had a right to remove the whole.

The case shows that Heflon had transferred all the grain growing on the farm, reserving only this right to four bushels, and the defendant did not show that Heflon had any other grain. This four bushels was, then, exempt from attachment by the statute, and the officer was a trespasser, as to Heflon, in taking it.

The opinion of the court was delivered by

REDFIELD, J.—In the present case it is not necessary to go into any nice learning in order to determine whether the contract between Heflon and Cynthia Russell, by which the plaintiff claims title to the property sued for, was a pledge or pawn, a mortgage, or a mere lien, as, in either case, the decision of the questions involved must be the same.

1. The question of possession. If it appear by the case, that the possession, in fact, remained in Heflon until the attachment by the defendant, it must be fatal to the case in either view. As a pledge merely, it could not be created without a change of possession, and would be lost by a surrender of the thing to the pledgor. The same is the law in regard to a lien, whether created by the usage of trade, by custom, or by express contract. A mortgage might exist between the parties, without any change of possession, as, in such case, the general property is transferred to the mortgagee ; but, without a substantial and continued change of possession, it would be unavailing, as against creditors. It does not appear in this case, that the possession continued in the debtor, Heflon, and this court cannot presume it. Every presumption is in favor of the proceedings in the court below. Here, as every where, we presume *omnia rite acta*, until the contrary is made to appear. It would seem probable, from the case, that the debtor either never had the possession of the property, or parted with it long before the attachment.

2. The right of Cynthia Russell and her husband to assign. If this be a pledge or mortgage, by every rule of law, it is assignable. 2 Kent's Com. 579. And if it be but a mere lien, although that right will not pass by a general pledge, as was held in *Daubigny* v. *Duval*, 5 Term R. 604–5, *Newton* v. *Thornton*, 6 East, 17, and many subsequent cases, yet the mere transfer of the right of lien, as was done in the present case, is good. 2 Kent's Com. 639 ; *Urquhart* v. *M'Iver*, 4 Johns. R. 103. In the latter case the rule is thus laid down by Kent, Ch. J. "Though a factor cannot pledge the goods of his principal, *as his own*, yet he may deliver them to a third person, as security, with notice of his *lien*, and as his agent to keep the possession for him, in order to preserve that *lien*." The rule is laid down

substantially the same in the last edition of the commentaries of the same learned judge. This is, now, doubtless the well settled law, upon this subject. *M' Combie* v. *Davies,* 7 East, 5. The rule seems to have been built upon the suggestions of Lord Ellenborough in this latter case.

But if it were necessary to discuss the point, it is obvious, that the present case is not that of lien, *strictly* and technically speaking, which is a security for some labor done or expense incurred in regard to the *very thing, in which the lien exists.* This is more properly a pledge, it being founded on the words " turn out and deliver." If a mortgage were intended, we should expect to find the parties using terms more indicative of an intention to transfer the *general* property. Chancellor Kent, 2 Com. 577, and Mr. Justice Story, on Bailments, 197, say, a pledge, or pawn, " is a bailment of personal property, as security for some debt, *or engagement."* That is the present case, and the assignment is to the one in equity entitled to the benefit of the security, and who might, in a court of equity, have compelled such assignment.

The license given Heflon to use four bushels of the wheat did not make him a tenant in common of the mass.

Judgment affirmed.