DARWIN A. HAMMOND v. ERASMUS PLIMPTON, *Appellant.*

### Trespass. Contract. Pledge.

I. agreed to cut and draw a quantity of wood for P. from a wood lot, the right to cut from which belonged to P., and, by agreement between them, the wood was to be I's property until he was paid by P. for his work. I. cut and drew a portion of the wood and left it in the highway near P's shop, the fee of the land where it was left belonging to R., whose consent that it should be placed there, was obtained by P. and I's agent, who drew the wood. P. took and used a few cords from this wood by I's consent, but paid him nothing on the contract. The wood, while lying in the highway, was attached and sold on execution as the property of P., and was purchased at the sheriff's sale by the plaintiff. After the attachment, but before the sheriff's sale, the plaintiff purchased the wood of I. and after the sheriff's sale removed it, whereupon the plaintiff brought trespass against him. *Held,* that I. had a special property in the wood under his agreement with P., which was binding both as against P. and his creditors; that P's interest passed to the defendant by his purchase, and that the plaintiff could not recover.

TRESPASS for a quantity of wood. The case was referred, and the referee reported the following facts:

On the 17th of November, 1854, a written contract was made between Nelson Ingraham and Joseph P. Parkhurst, by which the former agreed to cut one hundred and fifty cords of wood for the latter, on a wood lot belonging to one Kidder, and to deliver a portion of it of a certain quality and size at Parkhurst's shop, and the remainder at Joseph Ramsdell's mill-yard, piled up in good shape. Parkhurst agreed to pay Ingraham eight shillings per cord for cutting and drawing the wood, and it was agreed between them that Ingraham was to own and possess the wood until he should get his pay for cutting and drawing it.

Ingraham proceeded under his contract to cut and draw the wood, and about thirty cords of it, being the subject of controversy in this suit, were deposited by him within the limits of the public highway near Parkhurst's shop. The fee of the land, on which this wood was deposited, belonged to Joseph Ramsdell, and the wood was placed there by his consent given to Parkhurst and the servant of Ingraham, who drew the wood. This wood was subsequently attached on the 8th of January, 1855, in a suit against Parkhurst, as his property, by one Johnson, a deputy sheriff. Parkhurst confessed judgment in said suit, and an execution was issued against him thereon; upon which the wood in question was sold by Johnson to the plaintiff on the 8th of February, 1855. Previous to the sale on execution, Parkhurst had used three or four cords of the wood, by permission from Ingraham, but he had paid the latter nothing under the contract.

On the 7th of February, 1855, the defendant purchased of Ingraham, for a valuable consideration, the wood then lying upon the margin of the highway, as aforesaid, but did not remove any part of it until after the execution sale to the plaintiff, but before the commencement of this suit he had drawn away about twenty-three cords thereof.

The defendant offered in evidence before the referee a written submission to and an award of arbitrators between Ingraham and Johnson, in relation to a controversy between them relative to their respective claims to the wood in question. The submission was made February 6th, and the award February 7th, 1855, and the

substance of the latter was that Johnson had "no legal claim or possession of the wood in controversy from the fact that the assignment thereof to him from Parkhurst was not in accordance with law, and therefore void." To the admission of the submission and award the plaintiff objected; but it was finally agreed that the referee should receive them, subject to the opinion of the court as to their admissibility.

The defendant then offered parol proof that Johnson, at the hearing before the arbitrators, insisted upon his right and title to the wood under the attachment and levy above mentioned, and that testimony relating thereto was heard and considered by the arbitrators with other evidence in the case.

To this evidence the plaintiff objected, and it was excluded by the referee.

Upon this report, the county court, at the September Term, 1856, —UNDERWOOD, J., presiding,— rendered judgment for the plaintiff for the value of the wood taken by the defendant.

Exceptions by the defendant.

*H. E. Stoughton* and *John Roberts*, for the defendant.

*Butler & Knowlton* and *C. N. Davenport*, for the plaintiff.

The opinion of the court was delivered by

BENNETT, J. This is an action of trespass for a quantity of wood. The plaintiff claims title to the wood, as derived from Joseph P. Parkhurst, by means of a sheriff's sale upon an execution against the said Parkhurst. The defendant claims title to the same wood by means of a purchase of Nelson Ingraham.

It seems that in November, 1854, Ingraham and Parkhurst entered into an agreement for cutting and drawing a quantity of wood from the lot of one Foster Kidder. Ingraham was to cut the wood in a particular manner, and deliver a part at Parkhurst's shop, and a part at Joseph Ramsdell's mill-yard, and Parkhurst was to pay him a given sum per cord, for cutting and drawing, and the contract provides " *that Ingraham shall own and possess the wood until he is paid for cutting and drawing.*" The wood in controversy was cut and drawn by Ingraham under his contract

with Parkhurst, and piled near Parkhurst's shop, in the highway, the fee of which is in J. W. Ramsdell; and the wood was piled in this place by the consent of Ramsdell given to Parkhurst, and to the agent of Ingraham, who drew the wood. The wood was attached and sold on the execution against Parkhurst, as his property; and after the attachment and before the sale, the defendant bought the wood of Ingraham then piled in the highway, but did not remove any part of it until after the sale on the execution, and after that, he drew away some twenty-three cords of it.

The first question is, how does this case stand as between the parties to this suit? Which has the better right? and secondly, how are those rights to be affected by the arbitration between Ingraham and Johnson? The defendant bought the wood in question, of Ingraham, for a valuable consideration, on the 7th of February, 1855, and he succeeded to Ingraham's rights.

This was after the attachment, but before the sale on the execution against Parkhurst. It is to be inferred from the case, that Parkhurst had contracted to purchase of Foster Kidder a quantity of wood standing upon his land, and had made a bargain with Ingraham to cut and haul it. The case finds that Parkhurst had not paid Ingraham anything for cutting and drawing; and the effect of the agreement that Ingraham was to own and possess said wood until he got his pay for cutting and drawing, would be to create in Ingraham a special property in the wood, binding against Parkhurst, and upon the facts disclosed against the creditors of Parkhurst. By the terms of the contract, Ingraham was to deliver a part of the wood at Parkhurst's shop. The case finds, that the wood in question was delivered and deposited near the shop in the highway, and upon land, the fee of which was in one Ramsdell; and that it was piled there by the consent of Ramsdell, and of Parkhurst, and the servant of Ingraham who drew the wood. We think no one can question but what Plimpton acquired a valid right to the wood as against Parkhurst to the extent of Ingraham's right. The wood was piled in the highway by the consent of all concerned, and it can not be claimed that Ingraham had lost his special property in the wood, as against Parkhurst. The parties did not so treat it. The case finds, that the three or four cords, which were used of the wood by Parkhurst before the sale on the execution,

were taken by the consent of Ingraham. The wood when delivered in the highway was subject to the special property of Ingraham in it, by force of the agreement made with him before he cut it. It is well settled, that a mortgagee or a pawnee of a chattel, may assign over the thing mortgaged or pawned ; and the assignee would take it under all the responsibility of the original party. 2 Kent's Com. 579 ; *Russell* v. *Fillmore,* 15 Vt. 135. The sale of the wood by Ingraham to Plimpton would carry with it all the interest which he had in it. The question will then arise, was this wood in a situation to be attached on the 8th of January, 1855, as the property of Parkhurst, so as to defeat the rights of Ingraham, by the attachment and subsequent sale of it on execution? It is not necessary to say what would be the effect if the wood in question had been delivered into the actual possession of Parkhurst. But it was not. It was within the control of Ingraham, and his special property was protected in it. It was held in *Bailey* v. *Quint,* 22 Vt. 474, that if the vendee remove personal property from the premises of the vendor to premises occupied by a third person, it is a sufficient change in the possession, as against the creditors of the vendor, although the person to whose premises the property was removed had not been informed of the sale.

In the case before us, the property never was on the premises of the vendor; and if Parkhurst thought best to accept a delivery in the highway, it may well be subject to the rights of Ingraham. Parkhurst so treated it, as he acted under the permission of Ingraham in taking the few cords which he drew away or used.

We do not see that the proceedings in the arbitration between the officer who attached the property as belonging to Parkhurst and Ingraham, can have any effect. The case seems to have been decided against the right of the officer.

Judgment reversed, and judgment for the defendant on the report.