MISSISQUOI BANK v. J. T. & J. EVARTS.

*Evidence. Books of Entry. Province of the Court in Charging the Jury.*

When on cross-examination, the reliableness of a witness's testimony is forced to depend mainly on what appears upon books of entry kept by the witness in relation to a certain business transacted by him, and out of which the matter in controversy arose, and as to his mode of doing which he had testified in chief without objection, it is legitimate for the other party to show fully the manner in which such business was transacted, and how such books were kept, as corroborative of the testimony of the witness; and such books are evidence for the same purpose.

It is the province of the court to instruct the jury as to the true light in which, under the law, the materials of evidence are to be considered and used; and, when some question arises on the subject, the court may lawfully state to the jury their impressions and understanding of how a witness meant to be understood, and indicate how such impressions and understanding were derived; especially when the court tell the jury that it is all a matter of fact for them to determine upon the testimony.

ASSUMPSIT on a promissory note for $290, payable to the plaintiff. Plea, payment, and trial by jury, April term, 1872, REDFIELD, J., presiding.

At the time the note in suit was executed, Homer E. Hubbell kept a deposit of money at Fairfax, and discounted notes for the plaintiff, and discounted this note. The note was eighteen months overdue when the defendants were called upon to pay it.

The defendant, James Evarts, testified that on the day the note became due, or a day or two before, he paid it to said Hubbell in the street near said Hubbell's house, in Fairfax; that Hubbell then said the note was at the bank, it being his practice to send all notes discounted by him to the bank, and that when he sent the money to the bank, the note would be sent back to him, and that witness could have it by calling for it. The said defendant's son testified that he was present and saw the money paid as aforesaid.

The plaintiff introduced said Hubbell as a witness, who testified to the manner of his doing business for the plaintiff. It appeared that when he discounted a note, it was sent to the bank, at Sheldon, where it remained until the money was paid thereon, when he sent the money to the bank, and the note was returned to him for the maker; that when money was thus paid to him, he

gave no receipt therefor, but practiced entering on a cash-book all money by him paid out on notes discounted, and all money received in payment of notes; that on his cash-book there was an entry of the money paid to the defendants at the time the note in suit was discounted, but no entry of any money received in payment thereof. He also testified that the said James Evarts never paid said note to him. On cross-examination he testified that he depended in the main upon his cash-book for his recollection as to the non-payment of the note; that he did not know but the note had been paid to the bank, but that when inquired of at the bank, he was sure it had not been paid to him; that he remembered thinking at the time the note was discounted, that the defendants were new customers, and would probably pay it.

The plaintiff then offered to show by said Hubbell the manner in which he transacted the business of the bank, and how he kept his cash-book; to which the defendants objected. The court overruled the objection, and the defendants excepted. The said Hubbell then testified how he conducted the business, and how he kept his cash-book, and how and when he made his settlements thereon, and stated that he made a settlement every night, when he had time, and every Saturday night, to see if there had been any error. The plaintiff offered said cash-book in evidence in support of Hubbell's testimony, and it was admitted by the court; to which the defendants excepted. The plaintiff also introduced as a witness a girl who lived with the said James Evarts, and who was with him at the time he claimed to have paid the note, who testified that they did not stop, nor pay money to any man, to her knowledge.

The court charged the jury as follows:

"The witness, Hubbell, in support of his testimony, produces his books of entry; he tells you of the manner of keeping those books; of the weekly settlement of his cash-account; that he has kept those books, and done business for the bank, some dozen years, or more; and the whole manner of doing the business has been explained to you, and the books will be before you. The weight of the witness's testimony is all for the jury, both as to the person and manner, and the clearness and intelligence on the one side, or the want of it on the other. The degree of confidence

and faith you have in the integrity and certainty of the witness, the manner, measure, and weight of it, are all for the jury.

" Counsel have claimed that the court should instruct the jury as to the weight of that book. I am not aware of any fixed legal rule as to the weight which a book of contemporaneous entry bears. It depends, as all triers know, upon the accuracy and character of the same. Thus, in a book of accounts where there are alternate entries from time to time of accounts against different persons, it would not be so easy to go into a false charge, as when they are kept item after item, one after another, against the same person. A witness's entries or memorandum made at the time, are always admissible in corroboration ; because, if a witness is honest, and made a memorandum at the time, it has a great deal of force as against his misrecollection ; but, undoubtedly, as is urged to you, you will find the chief weight of the book in the fact, if you find it from inspection, that Hubbell was in the habit of periodically, and within a few days—within a week of each other—balancing his books and counting his cash. Counsel for the plaintiff urge to you, from the manner of keeping this, like a cashier's account, in a bank, that when he balances, it is utterly impossible, unless he makes an entry of a false item, to balance his accounts, if he has money on hand that he cannot account for ; or, if there is a balance against him at the end of the week, he must know it. Whether that be absolutely so, is a matter for you. But it is apparent, if those books were honestly balanced, and found to balance the week this note is claimed to have been paid, except as to $20, which he minuted as an error in exchange of money with Dee, it would be pretty probable that if he had $290 he would have discovered it. · Counsel argue to you that it would have been impossible for him not to have known it, and that you cannot explain it, except upon the theory that Hubbell was in a position intentionally to purloin those funds at the time. You will examine the manner of the entries, the times he settled with himself, and from the testimony, his manner of entry at the time, if he did so, and in connection with his testimony, you will give just that measure of weight to the evidence, which, from your experience, you think it entitled to receive ; the court have no intimations as to its weight."

To the charge of the court in regard to said book, the defendants excepted.

After the jury retired, being unable to agree, they returned into court, and inquired whether Hubbell kept his bank money separate from his private cash. The reporter then read disputed

portions of the testimony to the court ; and the court said to the jury :

" In regard to the testimony of Hubbell, and the manner of keeping his account, whether the book refers solely to the bank money, or all the money he received, from the book itself and from his general statement, the impression was made upon the court that he spoke of all his money. You will notice when he balanced his book the Saturday after the defendant claims he paid him $290, he found an error of $20, and entered it upon his book as a supposed error in exchange with Dee. From that, and other entries, I infer he made an entry of all his money, and then counted it up and saw whether his book balanced. That is the way he became aware he had $20 surplus that week. In looking over his entries, he says he was satisfied that it must have occurred in exchanging money with Dee. Although that exchange was not entered on the book at all, being an even exchange, he found he had $20 in money that did not belong to the bank, but belonged to some one other than himself; and he made it right."

The court then remarked at length upon the importance of the jury's agreeing, and then said :

" As I understand it from the book and the general bearing of the testimony, Hubbell meant to give us to understand that all the money which he received was entered upon the book, and that he counted it up to see what the balance should be in his hands. I do not think he distinctly stated that ; but, from his general statement and explanation of the book, it appeared to me that he meant to say that. Counsel have reminded me that he did not distinctly testify whether the book contained entries of all cash received and disbursed. It is a mere suggestion, and should not control you in any way. If you think, from the book and from his general testimony, that he kept them separate, that he entered on the book merely bank money, and that that was his habit, it is a matter for you. It does not occur to me how he could enter the item of $20, as it had nothing to do with the bank, unless it was his practice to enter on this book other than bank money. He found in counting his money that he had $20 that certainly did not belong to the bank, and he held it on account of a supposed error with Dee ; and my impression is there are other instances indicating that. It is all a matter of fact for you to determine upon the testimony."

To which instructions, the defendants excepted. Verdict for the plaintiff.

*M. Buck* and *H. S. Royce*, for the defendants.

The objection to showing by Hubbell the manner in which he transacted the business of the bank, and how he kept his cash-book, was well taken. The testimony had no tendency to prove the issue.

The admission of Hubbell's cash-book in support of his testimony, was error, there being no entry upon it pertinent to the issue—not even any memorandum to refresh his memory. *Mattocks* v. *Lyman et al.* 18 Vt. 98; *Morse* v. *Patten*, 4 Gray, 292. If the book was properly admitted, the charge was calculated to mislead the jury, by treating it as if there were entries upon it material to the issue.

What the court said in answer to the inquiry of the jury when they came into court disagreed, was not warranted by the testimony.

*Edson & Rand*, for the plaintiff.

It was legitimate for Hubbell to explain the manner in which he transacted business with the bank, and how he kept his cash-book. *Downer* v. *Rowell*, 24 Vt. 343. The cash-book, in connection with Hubbell's testimony, was properly admitted. *Soules et al.* v. *Burton*, 36 Vt. 652; Greenl. Ev. § 436; *Merrill* v. *I. & O. R. R. Co.* 16 Wend. 586; *Lapham* v. *Kelley*, 35 Vt. 195.

The charge as detailed in the exceptions, was correct, and such as the case called for. *Austin* v. *Bingham et al.* 31 Vt. 577; *Sawyer* v. *Phaley*, 33 Vt. 69.

The opinion of the court was drawn up by

BARRETT, J.   Mr. Hubbell as a witness, without objection, had testified to the manner of his conducting the business of loaning money and receiving payment of such loans for the plaintiff bank; from which it appeared that he was accustomed to enter on a cash-book the money paid out by him when a note was discounted, and also the money when received by him in payment of a note on which book was entered the money paid to defendant when the note was discounted, but there was no entry of the payment of money on the note. In addition to this, he testified that defend-

39

ant did not pay the money due on the note, as defendant had testified that he did. Thereupon, on cross-examination, the manner of the questions, and the answers of the witness, made the impression that his denial of the alleged payment by the defendant, resulted mainly from the fact that said book contained no entry of such payment. In this conjuncture, obviously, it was made by such cross-examination, both important and legitimate to show fully the manner in which the business was done—in the doing of which, and as part of it, was the keeping and making entries in the book; not that the book by itself would constitute affirmative evidence of the non-payment of the money, but it would, in connection with the mode of keeping it, as a part of the *modus operandi* of doing the business, bear upon the reliableness and effect of the testimony of the witness, in his denial that defendant had paid the money at the time alleged and testified by defendant.

If, by the cross-examination, the reliableness of his testimony had not been forced to depend on the book showing what had taken place in relation to the payment of the money by defendant as he had testified, it would have been unimportant to go into that detail of testimony to which objection was made, and also to have given the book in evidence. But when such a questionable condition of the witness's testimony was made by the defendant to depend on the entries and manner of doing the business of the bank, in connection with the book, certainly, upon common principles, the book, and its minute history, should be laid before the jury, to enable them to determine the value of the testimony of the witness, in denying that the payment was made as the defendant had testified. This is consonant with both text-books and decided cases.

We are unable to discover any thing improper in the remarks of the judge to the jury. It seems to us that in those remarks the true province was assigned to that book, viz: as bearing on the reliableness of Hubbell's testimony in denying the payment by the defendant. It is the weight of witness's testimony, that the court was presenting for the consideration of the jury, as touching the issue on trial: the court expressly declining even to advise them as to the weight of evidence afforded by the book

in its subordinate and ancillary character. The comments of the judge, giving some intimations to the jury how the book has significance as evidence at all, are both sensible and proper, and such as would naturally occur to the mind of one experienced in the principles of evidence, and in the just apprehension of the instruments of evidence and their legitimate use. The idea that it is the duty of the court to leave the jury to such light as may be shed upon them by counsel in the argument of cases, without intimations as to the true light in which, under the law, the materials of evidence are to be considered and used, not only is not proper to be countenanced, but is counter to the practice of the best class of judges. In the present case the jury were left free, not only to construe, but to weigh and apply, the evidence, and find the questionable facts from it. It would be a noticeable innovation if it should now be held that the court could not lawfully state to the jury his impressions and understanding as to how a witness meant to be understood in the testimony he had given, when some question had arisen on that subject, and indicate how such impression and understanding were derived—especially when the court close by telling the jury that, " it is all a matter of fact for you to determine upon examination of the testimony."

We regard the criticisms in the argument on this ground of exception as not warranted by principle or usage, and without adequate occasion in the present instance.

Judgment is affirmed.