PETTINGILL, BY NEXT FRIEND, *v.* ELKINS.

*Sale. Change of Possession. Province of the Court in Charging the Jury.*

Plaintiff had sleds stored by permission in an unoccupied house on a farm owned and occupied by P. and wife. Plaintiff bought milk-pans of his father, and sold him the sleds in part payment thereof, and his father agreed to put the pans after he had done using them where the sleds were, for plaintiff, which he did, and took the sleds, and notified P's wife thereof, who assented thereto, but P. had no knowledge of it. *Held*, that there was a sufficient change of possession to protect the pans from attachment by the father's creditors.

When the court calls the attention of the jury to certain views in which the evidence may be considered, it is not error, unrequested, not to call their attention to other views in which it may also be considered, provided they are left free to consider it in all possible views.

TROVER for a set of Jewett milk-pans. Plea, the general issue. Plaintiff waived all objection to the admission of evidence tending to show that defendant had title to the property. Trial by jury, September Term, 1877, PIERPOINT, C. J., presiding.

It appeared that said pans had been the property of H. F. Pettingill, plaintiff's father, and kept and used by him on a farm in North Troy, of which he was in possession, until some time in the fall of 1875. Plaintiff's evidence tended to show, that in September or early in October of that year, upon a settlement between himself, a minor, but emancipated by a gift of time, and

his father, his father was owing him for labor, and that an agreement was made whereby he was to have said pans in payment of his labor, and for a pair of sleds that he then sold his father; and that his father should keep and use the pans that fall as long as he wanted them, and when through using them, should put them into an old unoccupied house on a farm belonging to one Porter and wife jointly, where the sleds were then stored by permission of Porter, and leave them there for plaintiff.

Soon after that agreement, plaintiff went to Washington, D. C., the pans being then in his father's possession and use, and did not return until after the pans had been taken on execution and sold to defendant as hereinafter stated. Some time after plaintiff went away, his father put the pans into the old house, and told Mrs. Porter that he had put them there for plaintiff, and she assented. He gave no other notice of what he had done, and Porter did not know that the pans were put there until informed by the officer after they were attached. It appeared that the pans were attached on February 8, 1876, in a suit against H. F. Pettingill, in which J. M. Lake was nominal plaintiff, but the defendant the party in interest; that a judgment was obtained on March 13, 1876, and execution issued thereon on March 15; that the pans were taken on execution, and sold at sheriff's sale on March 30, 1876, to the defendant, who then had no notice or knowledge of any claim of title thereto by any one other than H. F. Pettingill.

The defendant introduced one Guy Woodward as a witness, who testified that on the last of October or first of November, 1875, he heard H. F. Pettingill offer the pans, with other property, to one Martin, in payment of a note on which he was then indebted; and that he then spoke of the pans as " *his* milk-pans."

Defendant requested the court to rule that there was no legal nor sufficient change of possession and delivery of the pans, and to direct a verdict for him. The court refused so to do, but charged that upon the sale of property it was necessary for the purchaser to take possession of it, in order to protect it from attachment by the creditors of the seller; that if there was not such a change of possession here, the creditor could hold the property; that if the property was sold to the son in good faith, and the

transaction between the father and son was what they testified it was, and the agreement was, that when the father got through using the pans he should put them in the place of the sleds that the son had stored in Porter's house with his consent, and take the sleds away, and if the father did so in performance of that agreement, there was such a change of possession as to protect the property from attachment on the father's debts.

As to the father's alleged offer to apply the pans in payment of the debt to Martin, the court charged that if the father had actually turned the property on his own debt, it would not necessarily establish the fact that he was not selling it for his son ; that the jury should look at the transactions just as they were, at the parties just as they stood, and at the facts just as they transpired, with the view of finding whether the agreement between the father and son was made to defraud the father's creditors ; that the alleged offer to Martin was to be considered in that view. The charge as to that offer was further as follows :

That is a transaction that has two sides to it. If the old man had sold the pans to the son with a view of keeping them from his creditors, would he naturally go to his creditors and offer to let them have them to pay the debt ? That would be somewhat inconsistent with the idea of cheating his creditors—to put the property in the hands of his son with a view of cheating his creditors, and then turn around to the creditors and say, " You may have this property in payment of your debt." Of course, you will look at this transaction just as it stands ; look at all these circumstances ; and see whether you find in this transaction evidence that satisfies you that this sale from the old man to his son was a fraudulent one—one made with the view of defeating the claims of creditors.

To the refusal to rule as requested, and to the charge as given, defendant excepted. Verdict for plaintiff.

*H. Ballard*, for the defendant.

The facts shown do not bring the case within the rule in this State as to the change of possession or notice of sale necessary to enable a purchaser to hold personal property against a subsequent attaching creditor. The rule is, that when personal property is at the time of sale in possession of a third party, the

vendee, to hold it against a subsequent attaching creditor, must *himself* give notice of the sale to such third party, with a request to keep it for the vendee.    *Whitney* v. *Lynde*, 16 Vt. 579 ; *Judd* v. *Langdon*, 5 Vt. 231 ; *Rice* v. *Curtis*, 32 Vt. 460.    Thus the notice, such as it was, was not given by the proper party.    See *Sleeper* v. *Pollard*, 28 Vt. 709 ; *Flanagan* v. *Wood*, 33 Vt. 332 ; *Stiles* v. *Shumway*, 16 Vt. 435.

Again ; the notice was insufficient because it was given to Porter's wife and not to Porter himself, who was in the possession and control of the premises where the pans were placed.    *Pierce* v. *Chipman*, 8 Vt. 334, *per* COLLAMER, J.    The reason of the rule, that a notice given to the party who has possession of the property is sufficient without a change of possession, is, that purchasers and attaching creditors are put upon inquiry of the one who has possession, and that such inquiry will give them knowledge of this fact.

The charge as to the alleged offer to Martin was erroneous. The testimony as to that was impeaching testimony.    Authority to an agent to sell property carries with it no authority to dispose of it in payment of the agent's own debt.    Such a disposition of property would be a conversion of it, and the jury, if charged at all upon that point, should have been so charged.

*A. V. Spaulding* and *R. H. Start*, for the plaintiff.

The ruling upon defendant's request that a verdict be directed for him, and the charge relative to the question of change of possession, were correct, and are fully sustained by the decisions of this court.    *Kendall* v. *Samson*, 12 Vt. 515 ; *Morris* v. *Hyde*, 8 Vt. 352 ; *Merritt* v. *Miller*, 13 Vt. 416 ; *Stephenson* v. *Clark*, 20 Vt. 624 ; *Flanagan* v. *Wood*, 33 Vt. 332 ; *Hutchins* v. *Gilchrist*, 23 Vt. 82 ; *Bailey* v. *Quint*, 22 Vt. 474 ; *Chase* v. *Snow*, 48 Vt. 436 ; *Allen* v. *Knowlton*, 47 Vt. 512.    If the pans had been in the possession of a third party at the time of sale, there should have been notice to such party, request to him to keep the property for the vendee, and an assent on his part so to do.    But this case is not within that rule, nor the reason of it.    When the pans were delivered as agreed, there was a substantial, open, and visi-

ble change of possession, which was notice to the world. *Flanagan* v. *Wood, supra* ; *Rothchild* v. *Rowe,* 44 Vt. 389. Such a delivery was a sufficient change of possession without notice to either Porter or his wife ; but if notice was necessary, notice to Mrs. Porter, who was one of the joint owners of the house and premises, was sufficient. *Brownson* v. *Hull,* 16 Vt. 309. As the pans were on the premises of the Porters and in their building, they were, *prima facie,* their property. *Hutchins* v. *Gilchrist, supra.*

The charge as to the offer to Martin was also correct. *Brackett* v. *Waite,* 6 Vt. 411 ; *Missisquoi Bank* v. *Evarts,* 45 Vt. 293 ; *Stevens* v. *Talcott,* 11 Vt. 25 ; *Gale* v. *Lincoln,* 11 Vt. 152 ; *Yale* v. *Seely,* 15 Vt. 221.

The opinion of the court was delivered by

Ross, J. The first exception is in regard to the correctness of the charge in respect to change of possession.

The court, in substance, charged the jury, that if the sale of the pans from the plaintiff's father was made in good faith and without any purpose to defraud his father's creditors, and if the father, agreeably to and in compliance with the terms of the sale, did, when he was through using the pans that season, put them into the unoccupied house of Porter for the plaintiff, in the place of the sleds, which the plaintiff had stored there with the assent and permission of Porter, and did take the sleds away as his own,—the sleds being exchanged in part payment for the pans—it would constitute a sufficient change of possession to protect the pans from attachment on the father's debts. The unoccupied house was on premises the title to which was in Porter and his wife, and occupied by them, and not occupied or under the control of the plaintiff's father.

In *Bailey* v. *Quint,* 22 Vt. 474, it was held that the removal by the vendor and vendee, of boards from the mill-yard to the mill shed, with the permission of the owner of the shed, obtained by the vendee, but without notice to the owner of the shed of the sale, constituted a sufficient change of possession to protect them from attachment as the property of the vendor. The case is cited

and recognized as an authority in *Hammond* v. *Plimpton*, 30 Vt. 333. We think that the case at bar falls within the principle and scope of that decision. If the plaintiff had purchased the sleds of his father, and caused them to be placed in Porter's unoccupied house with Porter's permission, although Porter was not notified of the purchase, by the decision of *Bailey* v. *Quint* they would have been protected from attachment on his father's debts. Supposing, while thus situated, he should exchange these sleds for other sleds, and cause the other sleds to be put in their place, without notice to Porter of the exchange, would not the latter be equally protected to the plaintiff against attachment on the vendor's debts as were the first? The first sleds were protected because they were in the plaintiff's possession, though on Porter's premises. Would not the latter be equally in the possession of the plaintiff? Having Porter's permission to store sleds on his premises, the law, without some showing to the contrary, would presume the permission to continue, though the sleds were exchanged for other sleds or other property not more cumbersome. It will be noticed that in *Bailey* v. *Quint*, obtaining permission by the plaintiff from the owner of the shed to place the boards there, and causing them to be placed there, effected the change of possession. In the case at bar, the plaintiff obtained the permission to store property in Porter's unoccupied house. He also caused the pans to be placed there. The father did not place them there through any right he had obtained from Porter, nor did he place them there for himself or as his property, but through the right obtained by the plaintiff and for and as the property of the plaintiff. There was no error in the refusal to charge, nor in the charge on this point.

Neither do we find any error in the charge in respect to the testimony of Guy Woodard. The court left the consideration and weighing of his testimony fully to the jury. An expression of an opinion by the court in regard to the character and weight to be given to testimony, if the full consideration of the same is submitted to the jury, is not error. *Missisquoi Bank* v. *Evarts*, 45 Vt. 293; *Stevens* v. *Talcott*, 11 Vt. 25; *Gale* v. *Lincoln*, 11 Vt. 152. But the court, in the case at bar, simply called the at-

tention of the jury to some views in which this testimony might be considered ; and it is not error that the court, unrequested, did not call their attention to other views that might be taken of this testimony, so long as the jury were left free to consider and weigh it in any and every possible view.

Judgment affirmed.