# STATE v. RUFUS YOUNG.

## October Term, 1894.

*Evidence.    Charge of court.*

1.   The respondent was indicted for the larceny of a team at Sunderland.    He testified upon the trial that he was not in that vicinity at the time of the larceny.    *Held*, that a baggagemaster upon the  B. & R. railroad  might  testify that  the night before the larceny a man rode  in  his car, and disappeared about the time the train passed Sunderland, and that two or three days afterwards he saw and spoke to the same man on the train, it appearing from other evidence that this man was the respondent.

2.   It was no error for the court to  say to  the  jury that certain facts developed  by the  testimony were "significant."    As said, it did not amount to the expression of an opinion.

Indictment for larceny of two horses, two harnesses and a buggy wagon.    Plea, not guilty.    Trial by jury at the June term, 1894, Bennington county, TAFT, J., presiding.    Verdict and judgment of guilty.    The respondent excepts.

The testimony of  the state tended  to  show that  the respondent came over the Bennington & Rutland railway from the direction of Eagle Bridge on the evening of August 29, 1893, reaching the town and village of Sunderland at about seven o'clock in the evening ; that about midnight he stole the team in question from the barn of a Mr. Hill, near the Sunderland railway station ; that he took out the shafts which were on the buggy and put the pole in their place, harnessed the horses to the buggy, and then went back into the barn for the purpose of  obtaining  a  pair of  splices to attach to the

reins; that while he was in the barn he struck a box with his foot, thereby making a noise which alarmed the dog; that the barking of the dog aroused Mr. Hill, who came out of the house just as the respondent was about to drive away and grabbed the rear wheel of the buggy, but was unable to hold it; that the respondent drove the team for a considerable distance, and was captured by two men who had followed his tracks, while feeding the horses in the woods beside the road near Huntley hill.

The testimony of the state further tended to show that after his arrest the respondent detailed the manner in which the team had been taken, the pole put in the place of the shafts, the making of the noise, the consequent barking of the dog, and the coming out of Mr. Hill, together with a correct statement of the route which he had taken with the team.

Upon the trial the respondent testified that about two o'clock of the morning on which he was captured he left Chester, Vt., with a horse and buggy, intending to drive to the town of Peru on lawful business; that when he reached Huntley hill, where he was captured, he met a man by the name of Dantse with the team; that he had previously known Dantse, and that Dantse then informed him that he had been on the train, and there recognized a detective upon the night in question; that he thereupon jumped from the train and stole the team with an intention of driving it to Chester, Vt., and thereby making his escape; that the respondent gave Dantse some oats with which to feed his team, and advised him to leave the team beside the road where it would be seen and recovered, and proceed upon foot; that just at this juncture the officers who arrested him appeared, and that Dantse hid behind a tree and escaped detection, while he was taken away with the team. The respondent testified that he did not have more than from three to five minutes' conversation with Dantse.

The court, in its charge to the jury, remarked that the respondent must either have stolen the team himself or have obtained the particulars in reference to its larceny from Dantse, and it was somewhat significant that he should have learned so many things and given Dantse so much advice, in addition, in so short a time. To this observation of the court the respondent excepted.

The state introduced as a witness one Bixby, who testified that upon the evening before the larceny he was acting as baggagemaster upon the train on the Bennington & Rutland railroad, by which it was claimed that the respondent had come to Sunderland; that a man came into his car and asked him if the next station was Sunderland, to which the witness replied that it was Arlington, and that soon after the man disappeared; that two or three days afterwards he saw the same man on the train, and asked him if he was not the man who had come up in his car two or three nights before.

The testimony of the officer who arrested the respondent showed that the man to whom the witness spoke upon the last occasion was the respondent, who was then in charge of the officer, having been arrested, and being upon his way from Bennington to Rutland. The respondent excepted to the admission of Bixby's testimony.

*J. K. Batchelder* for the respondent.

Bixby could not identify the respondent as the man with whom he spoke upon the two occasions; hence his testimony was inadmissible; *Hammond* v. *Smith*, 17 Vt. 233; *McAlcer* v. *NcMurry*, 58 Pa. St. 126; *Douglass* v. *Mitchell*, 35 Pa. St. 446; *United States* v. *Ross*, 92 U. S. 283; *Philadelphia City Pass. Co.* v. *Henice*, 98 Pa. St. 431; *People* v. *Hessing*, 28 Ill. 410; *Pennington* v. *Fell*, 11 Ark. 212.

*F. C. Archibald*, State's Attorney, for the state.

There was no error in the charge. *State* v. *O'Grady*, 65 Vt. 66.

TYLER, J. The testimony of the witness Bixby was, that on the evening of the alleged larceny a man rode with him in a baggage car; that at a certain point on the route the man asked him if the next station was not Sunderland; that he replied that it was Arlington, and that the man soon afterwards disappeared. This evidence only tended to show that the man was looking for the Sunderland station, near which the larceny was committed. It had no tendency to identify him as the thief.

Bixby further testified—and this was the subject of exception—that a few days later he saw the same person in a seat in front of him on a train going from Bennington to Rutland, and asked him if he did not come up with him "the other day"; and that the man replied in substance that if he did he behaved himself, and that he always intended to treat people well.

It is true that the whole testimony of Bixby, considered by itself, was immaterial, but the testimony of Yearly was that he was the officer who took the respondent in the train from Bennington to Rutland after the arrest; that the person with whom Bixby had the above conversation was the respondent, and that the conversation was had while he, Yearly, was sitting beside the respondent in the car on the route to Rutland. The testimony of Bixby, considered in connection with that of Yearly, tended to show that he saw the respondent on the night of the larceny near the place where it was committed. The evidence was not subject to the objection that it was a presumption based on another presumption; on the contrary, one witness testified to the *fact* of seeing a certain person on two occasions; the other witness testified that he saw the person on the second occasion, and identified him as the respondent.

There was no error in the remark of the court in the charge "that it was somewhat significant that the respondent could have learned so much and also advised Dantse what to do in so short a time." \* \* \* The remark did not amount to the expression of an opinion, and the question whether the respondent learned the alleged facts from Dantse and advised him, or whether the respondent was there with the team was expressly submitted to the jury. *Pettingill* v. *Elkins*, 50 Vt. 431 ; *Rowell* v. *Fuller*, 59 Vt. 688.

*Judgment that there was no error in the proceedings, and that the respondent takes nothing by his exceptions.*